UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MICHAEL EVANS and                                          Case No. 23-10622-t13
KELLY N. EVANS,

    Debtors.

STRATEGIC FUNDING SOURCE, INC.,

    Plaintiff,
v.                                                          Adv. Proc. 23-1050-t

MICHAEL R. EVANS, et al.,

    Defendants.

## **OPINION**

Before the Court is Plaintiff's motion for partial summary judgment that Defendants' debt to Plaintiff is nondischargeable under 11 U.S.C. § 523(a)(2)(A). The debt arises from a factoring agreement between Plaintiff and M.K. Custom Fabrication, LLC ("MK Custom"). MK Custom defaulted under the factoring agreement. In response, Plaintiff sued MK Custom's owner and guarantor, Defendant Kelly Evans ("Kelly"), for breach of contract and fraud. Kelly did not appear in the action and Plaintiff obtained a default judgment against her. Plaintiff relies on this judgment to establish that Kelly defrauded Plaintiff. Kelly disputes Plaintiff's right to rely on the default judgment because fraud was not "actually litigated." The matter has been briefed. The Court finds and concludes that the motion is not well taken and should be denied.

A.     Facts.[1]

The Court finds that there is no genuine dispute about the following facts:[2]

Defendants are the debtors and Plaintiff is a judgment creditor in the above-captioned bankruptcy case.

Kelly was and is the sole owner, member, and manager of MK Custom.

On February 12, 2018, MK Custom signed a Revenue Based Factoring (RBF/ACH) Agreement with Plaintiff, pursuant to which MK Custom sold certain accounts receivable to Plaintiff for $148,000. Kelly guaranteed MK Custom's contract obligations. Several months later, MK Custom defaulted under the factoring agreement.

Plaintiff sued Kelly in the Circuit Court of the County of Hanover, Commonwealth of Virginia, in a case styled *Strategic Funding Source, Inc. v. Evans,* Case No. CL18-2090. The complaint included one count for breach of contract[3] and one count for fraud. Neither MK Custom nor Defendant Michael Evans ("Michael") was named as a defendant.

Kelly did not answer or otherwise appear in the Virginia action. Plaintiff apparently moved for judgment by default.[4] A hearing was set on the motion for December 20, 2018. On that date, the state court entered an "Order" finding:

> [T]he court … having heard Plaintiff's evidence in support of its motion finds that the Defendant is in default, that the Defendant knowingly and intentionally

---

[1] The Court takes judicial notice of its docket in this case, the Virginia action, and the New Mexico action (discussed below). *See Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) ("We take judicial notice of court records in the underlying proceedings."); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.").

[2] Some findings may be in the discussion portion of the opinion and are incorporated by reference.

[3] The complaint does not make it clear whether the "contract" was the factoring agreement, which Kelly did not sign in her personal capacity, or her guaranty.

[4] The motion is not part of the record, nor is there any evidence in the record about what evidence, if any, Plaintiff presented at a hearing on the motion for default judgment.

-2-

misrepresented material facts, upon which the Plaintiff relied, and that as a result of the Defendants' fraudulent inducement the Plaintiff suffered damages, and that the Plaintiff is entitled to judgment in the principal amount of One Hundred Sixty-Four Thousand Nine Hundred Fifty-Two and 00/100 Dollars ($163,952.00), plus interest at the judgment rate of six (6%) per annum, from the date of judgment, attorney's fees of Eight Thousand Two Hundred Fifty and 00/100 Dollars ($8,250.00), and any and all court costs….

The Order, which gave Plaintiff a default judgment for the amount recited, appears to have been drafted and submitted by Plaintiff's counsel. Nothing in the record indicates what evidence, if any, was presented to the court about Kelly's alleged fraud.

On March 13, 2020, Plaintiff filed a Notice of Filing of Foreign Judgment in the Thirteenth Judicial District Court, County of Sandoval, State of New Mexico, commencing *Strategic Funding Source, Inc. v. Evans,* Case No. D-1329-CV-2020-00615. On April 22, 2020, the New Mexico court issued a transcript of judgment, which Plaintiff recorded on June 11, 2020, in Sandoval County, New Mexico.[5] Plaintiff later obtained a writ of garnishment from the New Mexico court and served it on Kelly's employer.

Defendants filed this bankruptcy case on July 31, 2023. Plaintiff timely commenced this adversary proceeding. In its complaint, Plaintiff argues that Kelly's debt[6] to Plaintiff is nondischargeable under §§ 523(a)(2)(A), 523(a)(2)(B), and 523(a)(4),[7] and asks for a declaratory judgment to that effect. Plaintiff also asks for a damages award, even though it already has one.

Defendants timely answered the Complaint. Plaintiff filed a motion for partial summary judgment on its § 523(a)(2)(A) claim, to which Defendants responded and Plaintiff replied.

---

[5] The New Mexico transcript of judgment may contain an error in the judgment amount. It states that the attorney fees awarded by the Virginia judgment ($8,250) are a "Cost" that accrues interest at 8.75%. Attorney fees are not a cost, and the Virginia judgment makes clear that the attorney fees do not accrue post-judgment interest.

[6] The complaint treats Michael as co-liable with Kelly, although that may not be the case.

[7] All statutory references are to Title 11 of the United States Code.

B.      Summary Judgment Standards.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. "[T]he substantive law [governing the dispute] will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A dispute is genuine when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' and a fact is material when it 'might affect the outcome of the suit under the governing substantive law.'" *Bird v. W. Valley City,* 832 F.3d 1188, 1199 (10th Cir. 2016) (citing *Anderson*, 477 U.S. at 248).

The "party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying [the portions of the record that] demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323.

C.      Full Faith and Credit.

Plaintiff argues that the full faith and credit clause of the United States Constitution supports its summary judgment motion. The clause is implemented by the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80 (1984). The statute "requires a federal court to give the same preclusive effect to a state-court judgment that the judgment would be given in the courts of the state in which the judgment was rendered." *In re Crespin,* 551 B.R. 886, 898-9 (Bankr. D.N.M. 2016) (citing *Havens v. Johnson,* 783 F.3d 776, 785, n.6 (10th Cir. 2015)).

> It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered. In *Allen v. McCurry,* 449 U.S. 90, 101 S. Ct. 411, 66 L.Ed.2d 308 (1980), this Court said:

> "Indeed, though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so...." *Id.,* at 96, 101 S. Ct., at 415.

This principle was restated in *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S. Ct. 1883, 72 L.Ed.2d 262 (1982):

> "Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Id.,* at 466, 102 S. Ct., at 1889.

See also *Haring v. Prosise,* 462 U.S. 306, 103 S. Ct. 2368, 76 L.Ed.2d 595 (1983). Accordingly, in the absence of federal law modifying the operation of § 1738, the preclusive effect in federal court of petitioner's state-court judgment is determined by [state] law.

*Migra v. Warren,* 465 U.S. at 81.

D.     Res Judicata/Claim and Issue Preclusion.

Historically, claim and issue preclusion were "collectively referred to as 'res judicata.'" *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008). In modern jurisprudence, courts have moved away from the phrase *res judicata*, in favor of clearer terminology to distinguish claim preclusion (the effect of a prior judgment in foreclosing successive litigation of the same claim) from issue preclusion (the effect of a prior judgment in foreclosing successive litigation of an essential issue of fact or law actually litigated and resolved). *See New Hampshire v. Maine,* 532 U.S. 742, 748–49 (2001) (distinguishing claim and issue preclusion); *Taylor,* 553 U.S. at 892 n.5 (claim and issue preclusion "have replaced a more confusing lexicon").

E.     Claim Preclusion.

1.     The judgment debt. There is no question that the New Mexico judgment establishes the existence and amount of Kelly's debt to Plaintiff. There is no similar claim preclusion for Michael, who was not a named defendant.

2.     Nondischargeability. Plaintiff's nondischargeability proceeding is a matter within this Court's exclusive jurisdiction, so claim preclusion does not apply. *See Brown v. Felson*, 442 U.S. 127, 138-39 (1979) ("the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeabilty of [a] debt."); *see also, In re Dietz*, 760 F.3d 1038, 1043 (9th Cir. 2014) ("the bankruptcy court, via the reference from the district court, has the exclusive authority to determine the dischargeability of debts under § 523(a)(2)"); and *In re Crespin*, 551 B.R. at 900 (same).

F.     Issue Preclusion.

1.     What law applies. As the first judgment was issued by a Virginia court, it would seem logical to apply Virginia's issue preclusion rules. However, Plaintiff domesticated the judgment in New Mexico and has been attempting to collect the New Mexico judgment since 2020. Plaintiff used the New Mexico judgment to create a judgment lien on Defendant's real property and to obtain a writ of garnishment. The debt at issue in this proceeding is the New Mexico judgment debt. It therefore is fair to apply New Mexico law.

"Once domesticated in New Mexico, a foreign judgment is entitled to the same enforcement procedures and remedies as a judgment originating in New Mexico." *In re Giron (Welch v. Giron)*, 610 B.R. 670, 675 (Bankr. D.N.M. 2019). *See also* Restatement (Second) of Conflict of Laws § 99 (1971) ("[t]he local law of the forum determines the methods by which a judgment of another state is enforced."). Because Plaintiff seeks to enforce the New Mexico judgment rather than the Virginia judgment, the Court will apply New Mexico law on enforcing judgments, including New Mexico's issue preclusion rules. *Giron*, 610 B.R. at 677.

2.     Issue preclusion under New Mexico law. In New Mexico, the elements of issue preclusion are: 1) The parties in the second suit must be the same or in privity with the parties in

the first suit; 2) The causes of action must be different; 3) The issue or fact must have been actually litigated in the first case; and 4) The issue must have been necessarily determined in that case. *Blea v. Sandoval,* 107 N.M. 554, 559 (Ct. App. 1988). "If the party asserting issue preclusion establishes these four elements, the burden shifts to the opposing party to demonstrate that he or she was not afforded a fair opportunity to litigate the issue in the earlier proceeding." *In re Lopez,* 2022 WL 1160607, *2 (Bankr. D.N.M.).

Here, the Plaintiff and Kelly are the same parties as in the Virginia action, so the first element is met as to Kelly.[8] Further, the nondischargeability proceeding before the Court is not the same as the state law claims litigated in the Virginia action, so the second element of issue preclusion is met with respect to Kelly.

However, Plaintiff cannot satisfy the third element because the Virginia judgment is a no-appearance, no-answer default judgment. The Virginia court found "that no pleadings have been filed in this action nor any appearance entered by or on behalf of the Defendant."

> Default judgments generally do not have issue preclusive effect under New Mexico law. *Blea v. Sandoval*, 1988-NMCA-036, at ¶ 13, 107 N.M. at 558, 761 P.2d at 437 ("In New Mexico, we recognize that default judgments do not have collateral estoppel [issue preclusive] effect in future litigation ...."); *Fogelson v. Wallace,* 2017-NMCA-089, n.2., 406 P.3d 1012, 1016 ("[C]ollateral estoppel cannot apply to a default judgment .... "); *Welch v. Giron (In re Giron),* 610 B.R. 670, 676 (Bankr. D.N.M. 2019) ("Neither New Mexico nor Tenth Circuit law gives issue preclusive effect to default judgments.") (citations omitted). Default judgments do not have issue preclusive effect because issues determined by default are not actually litigated. *Blea*, 1988-NMCA-036 at ¶ 14; *Giron*, 510 B.R. at 676 ("The reason for the refusal [to give issue preclusive effect to default judgments] is that the relevant issues were not 'actually litigated.'").

*Lopez,* 2022 WL at *6.

---

[8] Because Michael was not a party to the Virginia action, the judgment has no preclusive effect on him.

Because the judgment was not the result of any "actual litigation," it does not have issue preclusive effect on any element of Plaintiff's 523(a)(2)(A) claim in this preceding. *See Ideal v. Burlington Res. Oil & Gas Co. LP,* 148 N.M. 228, 232 (S. Ct. 2010) ("If any one element is not satisfied issue preclusion is not applicable.").

  3.  <u>Issue preclusion under Virginia law</u>. Even if Virginia preclusion rules applied, the "actually litigated" requirement would not be met. In Virginia:

> [f]or the doctrine to apply, the parties to the two proceedings, or their privies, must be the same; the factual issue sought to be litigated actually must have been litigated in the prior action and must have been essential to the prior judgment; and the prior action must have resulted in a valid, final judgment against the party sought to be precluded in the present action. *Glasco v. Ballard,* 249 Va. 61, 64, 452 S.E.2d 854, 855 (1995).

*TransDulles Center, Inc. v. Sharma*, 252 Va. 20, 22-23 (1996); *see also MAD Properties, LLC v. Cnty. of Augusta*, 83 Va. App. 141, 163 (2024) (to the same effect).

Unlike in New Mexico, default judgments can sometimes satisfy the "actually litigated" element of issue preclusion in Virginia. The seminal case is *TransDulles*, which involved the breach of a commercial lease. The landlord in *TransDulles* brought an action against the tenant for unlawful detainer. The tenant failed to answer or appear so the landlord moved for a default judgment. At the hearing, the landlord produced testimonial and documentary evidence of tenant's breach of lease and the amount due. The court entered a default judgment evicting the tenant and awarding damages for unpaid rent.

The landlord later brought a second action against the tenant for breach of lease, seeking recovery of additional rent that had come due post-eviction. The tenant appeared in the second action. When the landlord moved for summary judgment based on the rulings in the unlawful detainer action, the tenant objected, arguing that the issues decided by the unlawful detainer court

had not been actually litigated because of the default judgment. The trial court in the breach of

lease action agreed, but the Virginia Supreme Court reversed:

> We do not agree with the tenant's contention, nor do we agree with the view typified
> by the Restatement comment (in "the case of a judgment entered by ... default, none
> of the issues is actually litigated"). Virginia law does not support a blanket
> exemption from the application of collateral estoppel in the case of a default
> judgment.
> . . .
> The disputed questions are whether the tenant's personal liability was actually
> litigated in the district court proceeding and whether that factual issue was essential
> to the judgment in the prior proceeding. We answer both queries in the affirmative.
> First, the tenant's personal liability for rent and other charges, including attorney's
> fees, under the lease actually was litigated in the prior action. Testimonial and
> documentary evidence was presented ex parte in the district court hearing. The
> circuit court record established that proof was presented in the district court through
> a bookkeeper for the landlord and through the landlord's attorney, who presented
> the lease and other documents including an affidavit supporting the attorney's fees
> claimed. We disagree with the tenant's argument that before an issue may be
> "actually litigated" in a court proceeding, the defendant must personally appear at
> the hearing and contest the matter.

252 Va. at 23-24.

In later cases interpreting *TransDulles*, courts have noted that "[a] court must look to the

parties' actions prior to entry of the default judgment to determine whether to apply collateral

estoppel." *See, e.g., In re Long,* 504 B.R. 424, (Bankr. W.D. Va. 2014); *In re Owens,* 449 B.R. 239,

252 (Bankr. E.D. Va. 2011) ("[I]n determining whether to apply collateral estoppel in the face of a

state court's default judgment, in the § 523(a) nondischargeability context, bankruptcy courts must

look to the actions of the parties prior to entry of that default judgment."); and *Lewis v. Long,* 521

B.R. 745, 750 (W.D. Va. 2014), affirmed, 521 B.R. 745 (W.D. Va. 2014) ("[C]ourts look to the

proceedings leading up to the entry of the default judgment, as well as the judgment order itself.").

Post-*TransDulles* decisions have denied requests for issue preclusion if the court found that

the default judgment had an insufficient evidentiary foundation to constitute "actual litigation."

*See, e.g., Capital Hauling, Inc. v. Forbes*, 75 Fed. Appx. 170, 172 (4th Cir. 2003) (distinguishing

*TransDulles*, the court found that the issue of fraud was not actually litigated in a prior Virginia state court action that resulted in a default judgment, and therefore could not be the basis for issue preclusion in a bankruptcy court nondischargeability action); *Owens*, 449 B.R. at 252 (to the same effect); and *Long*, 504 B.R. at 431 (to the same effect).

Here, although the default judgment recites that the Virginia court heard Plaintiff's evidence in support of its motion, the recitation appears to be boilerplate, drafted by Plaintiff's counsel. There is nothing in the record about the proceedings leading up to the entry of the default judgment or what evidence, if any, was actually offered by Plaintiff's counsel and considered by the court. While there is no dispute that MK Custom signed the factoring agreement and then defaulted, Kelly's alleged intent to defraud is another matter. Fraud requires a finding of *mens rea* that is difficult to make without substantial evidence, e.g., Kelly's direct and cross-examination, and/or comparing MK Custom's books and records with written financial statements that were submitted to Plaintiff. Under Virginia's issue preclusion rules, the current record does not satisfy the "actually litigated" element.

G.      Issue Preclusion is an Equitable Doctrine.

In any event, "[w]hether the doctrine [of issue preclusion] should be applied is within the court's discretion." *Shovelin v. Central New Mexico Elec. Co-op., Inc.*, 115 N.M. 293, 299 (S. Ct. 1993) (citing *Silva v. State*, 106 N.M. 472, 476 (S. Ct. 1987)). Issue preclusion "is not mandated in the Constitution or by statute. Rather, it is the product of court precedent based on a court's exercise of its equitable powers." *Giron,* 610 B.R. at 677 (citing *Acacia Villa v. U.S.,* 24 Cl. Ct. 445, 448 (1991)). Thus, "[e]ven when the elements of collateral estoppel are present, the decision whether to apply the doctrine is within the discretion of the trial court." *Id.* (citing *U.S. v. Kaytso,*

868 F.3d 1020, 1022 (9th Cir 1988) and *Arapahoe County Public Airport Authority v. F.A.A.,* 242 F.3d 1213, 1220 (10th Cir. 2001)).

It is one thing to find, based on the testimony and documentary evidence in an unlawful detainer action, that a commercial tenant has not paid rent for three months (as in *TransDulles*). It is quite another to find from a prior default judgment, based (from what the Court can tell) on no evidence, that a nonparty to a factoring agreement committed fraud in the inducement. Thus, even if issue preclusion were available, the Court would exercise its discretion and decline to apply the doctrine.

<u>CONCLUSION</u>

Under claim preclusion, Plaintiff's New Mexico judgment establishes Kelly's debt to Plaintiff but not the dischargeability of the debt. Second, issue preclusion does not establish Plaintiff's § 523(a)(2)(A) claim because fraud was not actually litigated. Third, to the extent Plaintiff's motion seeks a money judgment in addition to declaratory relief, the motion is not well taken. Finally, preclusive principles are not relevant to Plaintiff's claims against Michael, as he has never been a named defendant. Plaintiff's motion for partial summary judgment will be denied by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: January 29, 2025
Copies to: Counsel of record